## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRISTOPHER ROSE,

*Plaintiff,*

vs.

Case No. 16-CV-01417-EFM-KGS

TYSON FRESH MEATS, INC.

*Defendant.*

### MEMORANDUM AND ORDER

Plaintiff Christopher Rose filed this action against his employer, Defendant Tyson Fresh Meats, Inc., seeking damages and injunctive relief for alleged violations of the Americans with Disabilities Act of 1990 ("ADA"). Specifically, Plaintiff claims that Defendant failed to accommodate his disability in violation of the ADA by prohibiting him from using a cane or other assistive walking device at Defendant's facilities, failing to offer him reassignment to a vacant position, requiring him to be the most qualified applicant for a vacant position he sought, and allowing employees with greater seniority to obtain positions for which he could have applied. This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 35). Because Plaintiff cannot show that he was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within Defendant, the Court grants Defendant's motion.

# I.      Factual and Procedural Background[1]

In 2012, Plaintiff began working for Defendant as a freezer man at Defendant's facility in Holcomb, Kansas.  Plaintiff later became a manifest/pusher in the freezer, which required him to deliver products from the freezer to the loading dock, set up the load according to the specific load requirements, scan the product into a handheld scanner device, and load the product onto the trailer.

Plaintiff suffered an injury to his left knee while working at Defendant's facility in October 2014.  He returned to work a few days later and received a temporary reassignment as an accommodation to his then-current work restrictions.  Plaintiff's light duty position involved performing clerical duties in the freezer office, which included answering the phone, taking messages, calling delivery trucks, preparing damage reports, and filing papers.  Plaintiff did not perform any work on the computer in his temporary reassignment.  He performed light clerical duties for approximately four months, until February 18, 2015, when he underwent surgery on his left knee.

The parties assert different dates as to when Plaintiff was released to return to work,[2] but agree that as of May 22, 2015, Plaintiff had work restrictions that required him to (1) perform a sitting-only position and (2) use a cane to ambulate.  The parties also agree that Plaintiff has been unable to perform the essential functions of the freezer manifest/pusher position, with or without

---

[1] The Court sets forth the uncontroverted facts in the light most favorable to Plaintiff as the non-moving party.

[2] Plaintiff admits that Dr. Reardon released him to return to work on May 22, 2015, but alleges that Dr. Mohamed had previously released him to work on April 9, 2015, and asserts that Defendant did not consider Plaintiff to have been released to work until July 22, 2015, when Dr. Reardon removed the cane requirement from his permanent restrictions.

accommodation, since May 22, 2015.  Plaintiff has been on a continued leave of absence since May 22, 2015.

Jeanette Crump, a medical case manager in Defendant's Occupation Health Services Department, communicated with Plaintiff at various points regarding his work restrictions, return to work, potential positions available to Plaintiff, and other items.  Crump first visited Plaintiff at his home on May 23, 2015, and met with him several times thereafter, including on July 27, 2015, when she met Plaintiff at his home to explain Defendant's interactive process, discuss Plaintiff's work restrictions, and discuss Plaintiff's return to work.  Crump invited Plaintiff to visit Defendant's Human Resources ("HR") office on a weekly basis to meet with HR personnel and look for and identify potential positions, but Plaintiff declined to do so.  Crump notified Plaintiff of two vacant discretionary[3] clerk positions that Defendant believed could accommodate Plaintiff's work restrictions, and provided Plaintiff with information about these positions.  Plaintiff applied for the Distribution Clerk I or Clerk I-TCCS position (hereinafter "Clerk I position"), one of the positions mentioned by Crump.[4]

The Clerk I position job opening listed four requirements: (1) education: high school diploma or equivalent, (2) experience: previous clerical experience preferred, (3) computer skills: standard computer skills, and (4) communication skills: good communication skills and courtesy a must when answering and communicating on the phone.  Plaintiff does not have a high school diploma or equivalent, and Plaintiff does not have any computer training, lacks knowledge of basic

---

[3] Defendant has two types of positions at the facility—bid positions and discretionary positions.  Bid positions are filled solely by considering which employee has the most seniority, while discretionary positions are open to any applicant and are typically filled with the best qualified candidate.

[4] Plaintiff states that he did not apply for the other position because Crump told him not to apply for it since he would have to use his cane in a particular hallway to reach the office.  Defendant disputes this allegation.

word processing applications, and does not have on-the-job experience with computers.  Although Defendant knew that Plaintiff did not have a high school degree or equivalent, HR would not rule out waiving the high school degree requirement if someone interviewed well and demonstrated some knowledge or had some transferrable experience for the position.  Accordingly, HR allowed Plaintiff to interview for the position.  Plaintiff interviewed for the position on either August 20 or August 26, 2015, but did not receive the position.[5]

After being rejected from the Clerk I position, Plaintiff continued viewing open positions on Defendant's website, but did not apply for any other position, and did not visit the HR department to review open positions with an HR representative.  Crump wrote letters to Plaintiff explaining her role in assisting Plaintiff with his medical care and job placement and urging him to participate in the interactive process.  Plaintiff did not respond to Crump's letters and refused to speak with her when she called him to try to discuss the interactive process.

Plaintiff claims that Defendant precluded him from engaging in the interactive policy by enforcing its no-cane policy and prohibiting him from entering its facility due to his use of a cane. Once, when Plaintiff sought to enter the facility with his cane, a security guard stopped him at the front gate and told him he could not enter the facility with his cane.  Defendant knew of this incident, but alleges that if HR knew Plaintiff intended to visit the facility they would have notified the guards to permit him access.  Defendant also notes that Plaintiff completed an application and was interviewed for the Clerk I position in the employment office at the front of the facility, and

---

[5] The parties disagree as to why Plaintiff did not receive the position.  Plaintiff claims that he did not learn that he did not receive the position for two months after his interview, and that it took that long because the cane policy was under review, implying that he did not receive the position because of his use of a cane.  Defendant, however, attaches evidence demonstrating that Plaintiff had been denied the position as of September 10, 2015.  Plaintiff also claims that he did not receive the position because he was not the "most qualified" person for the position, while Defendant asserts that Plaintiff was not qualified at all.

thus, although Plaintiff was denied entrance on one occasion, Defendant did not generally prohibit him from accessing the facility.

In the Pretrial Order, Plaintiff asserts that Defendant violated the ADA by failing to accommodate his disability by (1) failing to reassign him to a vacant position, (2) prohibiting him from using a cane or other assisted-walking device at its facility, (3) requiring Plaintiff to be the most qualified applicant for a vacant position, and (4) allowing employees with greater seniority than Plaintiff to obtain vacant positions that Plaintiff could have filled. Defendant has moved for summary judgment on each argument.

## II.     Legal Standard

Summary judgment is proper if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[7] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[8] If the movant carries his initial burden, the nonmoving party may not simply rest on its pleading, but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[9] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory

---

[6] Fed. R. Civ. P. 56(a).

[7] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted).

[9] *Id.* (citing Fed. R. Civ. P. 56(e)).

allegations alone cannot survive a motion for summary judgment.[10] The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[11]

### III.    Analysis

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability in regard to employment application procedures, hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of employment.[12] "Discrimination" under the ADA includes failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."[13]

The Tenth Circuit has adopted a modified burden-shifting framework to assess failure to accommodate claims at the summary judgment stage.[14] This framework "provide[s] a useful structure by which the district court . . . can determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered."[15] Under this framework, Plaintiff must make an initial showing that (1) he is disabled, (2) he is "otherwise qualified," and (3) he

---

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[12] 42 U.S.C. § 12112(a).

[13] 42 U.S.C. § 12112(b)(5). Under 42 U.SC. § 12111(9), reasonable accommodations may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

[14] *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017).

[15] *Id*. (quotation marks and citation omitted).

-6-

"requested a plausibly reasonable accommodation."[16] "Whether an accommodation is reasonable under the ADA is a mixed question of law and fact" that must be determined "on the facts of each case taking into consideration the particular individual's disability and employment position."[17]

If Plaintiff satisfies his burden with respect to his prima facie case, "the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense."[18] If the employer meets its burden, it is entitled to summary judgment "unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitating any challenged elements of his . . . prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements."[19]

Although Plaintiff identifies four alleged grounds for recovery under the ADA, he has failed to respond to Defendant's arguments in favor of summary judgment on Plaintiff's claim that Defendant violated the ADA by allowing employees with greater seniority than Plaintiff to obtain vacant positions that Plaintiff could have filled.[20] Accordingly, the Court concludes that Plaintiff

---

[16] *Id.* (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012)).

[17] *Id.* at 1050-51 (quotation marks and citation omitted); *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122-24 (10th Cir. 2004) (citation omitted).

[18] *Id.*; *Punt*, 862 F.3d at 1050 (citation omitted).

[19] *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999); *Punt*, 862 F.3d at 1050.

[20] Indeed, Plaintiff has failed to identify any such positions that he was qualified to perform, with or without an accommodation, that were vacant and filled in such a manner. *See Bejar v. Dep't of Veterans Affairs*, 683 F. App'x 656, 657 (10th Cir. 2017) (citing *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014)). Further, it appears that this claim fails on the merits since Defendant has a seniority system governing certain positions and Plaintiff has not challenged the validity of that system. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 392 (2002) (recognizing that proposed accommodation that would normally be reasonable may be rendered unreasonable because the reassignment would violate a seniority system's rules).

concedes that Defendant is entitled to summary judgment on this claim, and will analyze the remaining claims below.

## A.    Failure to reassign Plaintiff to a different position

When a plaintiff grounds his failure to accommodate claim on a failure to reassign or transfer plaintiff to a different position, the Tenth Circuit requires the plaintiff to initially bear the burden of production with respect to a prima facie case containing five elements.[21]  Accordingly, to survive summary judgment on his failure to reassign claim, Plaintiff must make an initial showing that (1) he is a disabled person within the meaning of the ADA and has made any resulting limitations from his disability known to Defendant, (2) a preferred accommodation within his existing job cannot reasonably be accomplished, (3) he requested that Defendant accommodate his disability by reassignment to a vacant position, (4) he was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs, and (5) he suffered injury because Defendant did not offer to reassign him to an appropriate vacant position.[22]

Defendant argues that Plaintiff has failed to produce evidence sufficient to satisfy the fourth requirement of his prima facie case—that he "was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company."[23]  To be "qualified" within the meaning of the ADA, the employee must be able to perform the essential functions of the vacant position, with or without a reasonable accommodation—the individual must hold "the requisite skill, experience, education and other job-related requirements of the

---

[21] *Smith*, 180 F.3d at 1179.

[22] *Id.*

[23] *Id.*

employment position such individual holds or desires."[24]    Plaintiff "must, at the time of the summary judgment proceeding, specifically identify and show" that appropriate vacant jobs "were available within the company at or about the time the request for reassignment was made."[25] Plaintiff has specifically identified one position to which he believes Defendant should have reassigned him—the Clerk I position.  Plaintiff has not identified any other position that he had the requisite skill, experience, education, or other job-related requirements to perform.

Reassignment means "something more than the mere opportunity to apply for a job with the rest of the world."[26]    A disabled employee unable to perform his current position, if reassignment is proper, "has a right in fact to the reassignment."[27]  This right, however, "is not absolute."[28]  The Tenth Circuit recognizes several limitations, including that "the employee must be 'qualified' for the vacant position."[29]  Thus, "[a]lthough the statute does not require that the employee be the 'best qualified' employee for the vacant position," it strikes a balance by ensuring that the employer "need not make the reassignment unless the employee is truly qualified to do the job."[30]  "[T]he disabled employee must be capable of performing the essential core of the job at

---

[24] 29 C.F.R. § 1630.2(m).

[25] *Smith*, 180 F.3d at 1179.

[26] *Id*. at 1164.

[27] *Id*. at 1166.

[28] *Id*. at 1166.

[29] *Id*. at 1170.  Other limitations include: (1) "reassignment need be only to an existing vacant job," (2) "reassignment need not constitute a promotion," and (3) "no reassignment is required if it is not a 'reasonable' accommodation or if it poses an 'undue hardship.' "  *Id*.

[30] *Id*.

issue."[31]  Indeed, "[i]t would not be reasonable to require an employer to reassign an employee to a position for which he . . . is not otherwise qualified with or without reasonable accommodation, or to require a redefinition of the essential requirements of a vacant job so as to bring it within the qualification of a disabled employee."[32]  Accordingly, if an employee cannot perform an "essential function" of a position with or without a reasonable accommodation, the employer does not violate the ADA by failing to transfer the employee to that position.  Thus, if Plaintiff could not perform the "essential functions" of the Clerk I position, he was not "qualified" for the position and his claim fails as a matter of law.

"The term 'essential function' " includes "the fundamental job duties of the employment position the individual with a disability holds or desires."[33]  "Courts require an employer to come forward with evidence concerning whether a job requirement is an essential function."[34]  In analyzing job functions, the ADA dictates that consideration "be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."[35]  While an "employer's judgment is not conclusive evidence of the essential functions of a position, it weighs heavily in the determination."[36]

---

[31] *Duvall v. Georgia-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1262 (10th Cir. 2010) (citing *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007).

[32] *Smith*, 180 F.3d at 1178.

[33] *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 915 (10th Cir. 2004) (quoting 29 C.F.R. § 1630.2(n)(1)).

[34] *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 889 (10th Cir. 2015) (citations omitted).

[35] 42 U.S.C. § 12111(8).

[36] *Nyanjom v. Hawker Beechcraft Corp.*, 2015 WL 3397934, at *14 (D. Kan. 2015) (citing *Hawkins*, 778 F.3d at 889).

Here, Defendant argues that Plaintiff did not meet the minimum qualifications of the Clerk I position as he did not have the requisite education and lacked any computer skills. Defendant directs the Court to the job description and job requirements published in conjunction with the requisition seeking candidates for the position. The parties do not dispute that the listed "requirements" for the Clerk I position include a high school diploma or equivalent, (2) standard computer skills, and (3) good phone communication skills and courtesy when answering and communicating on the phone,[37] and Defendant asserts in its briefing that the Clerk I position in fact requires standard computer skills. Defendant has come forward with evidence that Plaintiff needed standard computer skills to be qualified for the Clerk I position, and Plaintiff has failed to carry his burden to show otherwise.

Plaintiff dedicates most of its arguments regarding minimum qualifications to whether the high school diploma or equivalent requirement was a bona fide requirement for the position. Plaintiff presented evidence that the position need not be filled by a candidate with a high school diploma, and noted that Defendant testified that the high school diploma requirement may be waived "when an employee had relevant knowledge or experience." Plaintiff failed, however, to present any evidence contradicting Defendant's assertion that the Clerk I position requires computer skills. Instead, he argues that "Tyson has not done enough to show that [Plaintiff] could not perform 'standard' computer skills." [38]

---

[37] The job description also states that previous clerical experience is preferred.

[38] Plaintiff's argument appears to be that the phrase "standard computer skills" is vague and undefined, but what specific "computer skills" were required is irrelevant in light of Plaintiff's failure to assert that he had *any* computer skills as well as his admission that he lacks any computer training, does not have certain basic computer skills, and has no on-the-job experience with computers.

First, it is not Defendant's burden to initially demonstrate that Plaintiff lacked computer skills. To the contrary, it is Plaintiff's burden to identify a vacant position for which he "was *qualified*, with or without reasonable accommodation, to perform."[39] Second, Plaintiff has admitted that he does not have any computer training, lacks knowledge of basic word processing applications, and does not have on-the-job experience with computers. Plaintiff has failed to identify any facts demonstrating that he had *any* computer training or skills that would qualify him for the Clerk I position, or to suggest that computer skills are not an essential function of the Clerk I position.[40] Instead, Plaintiff argues that his claims should proceed because Defendant should have provided him with training, and that Defendant nevertheless violated the ADA by requiring him to be the "most qualified candidate." Neither argument revives his claim.

       1.       *Computer skills training.*

Perhaps recognizing that he lacks the requisite computer skills, Plaintiff asserts that Defendant should have provided him with computer skills training. Plaintiff admits that "an employer does not have to provide training in order for an employee with disabilities to be transferred to a new position." Indeed, the law does not require such efforts on the part of Defendant.[41] He argues, however, that an employer must provide training to an individual with a

---

[39] *Smith*, 180 F.3d at 1179.

[40] Plaintiff appears to suggest that Defendant should have made an accommodation to "the so-called 'requirements' for the Clerk I position" by modifying the job requirements. To the extent Plaintiff contends Defendant should have removed computer-related job duties from the position, nothing in the record suggests that Defendant indicated that modifications to the Clerk I position could include removing computer-related job duties, and the ADA does not require employers to alter the essential functions of a position as an accommodation. *See Smith*, 180 F.3d at 1178.

[41] *See, e.g.*, *Bowers v. Bethany Med. Ctr.*, 959 F. Supp. 1385, 1391 (D. Kan. 1997) (upholding termination of employee transferred to a position requiring certain computer skills where the plaintiff failed to attain the requisite knowledge of the computer system and holding that failure to provide a third opportunity to take the computer exam or otherwise provide adequate training did not violate the ADA); 29 C.F.R. § 1630.2(m) ("The term 'qualified,' with

disability if the employer provides the same training to other employees.  But Plaintiff fails to identify any specific training Defendant provides to employees.  Instead, he generally argues that Defendant "has jobs where people are hired in but because of the nature of the job, a lot of training is required on the job," and that "pretty much every job out there" requires training.  Plaintiff has not identified any facts identifying the *type* of training Defendant provides to new hires, suggesting that other employees received training on standard computer skills, or identifying any employee hired or transferred into a position requiring computer skills that received training on standard computer skills.  In short, Plaintiff has failed to identify facts sufficient to create a genuine issue of fact regarding whether Defendant should have provided Plaintiff with computer training so that he could become qualified to perform the Clerk I position.

### 2.    *"Most qualified candidate"*

Plaintiff argues that Defendant improperly required him to be the most qualified candidate for the Clerk I position, and cites as evidence the fact that the form questionnaire for interviewing candidates includes a question that asks candidates what skills or accomplishment they will bring to the position that makes them the "best candidate," and alleges that the HR director testified that Plaintiff was not the best candidate for the position.

As recognized above, when an employer reassigns an employee as a reasonable accommodation, reassignment means "something more than the mere opportunity to apply for a job with the rest of the world," and the employee need not be the best or most qualified candidate.[42]

_____

respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires . . .").

[42] *Smith*, 180 F.3d at 1164.

Plaintiff, however, has not presented the Court with any evidence to suggest he met the minimum qualifications or had the requisite skills to perform the Clerk I position.  Thus, while Plaintiff may have been described as "not the most qualified candidate," it does not follow that he was, in fact, qualified for the position.  Plaintiff has not presented any evidence that he was qualified for the Clerk I position or any evidence that Defendant considered him qualified for the position.  Accordingly, it does not matter that Defendant selected the best or most qualified candidate for the position over Plaintiff because Plaintiff has not presented any evidence to suggest that he was qualified for the position.

Plaintiff has failed to establish his prima facie case that Defendant failed to accommodate him by failing to transfer or reassign him to the Clerk I position because Plaintiff has not put forth evidence that would allow a reasonable factfinder to conclude that he was qualified to perform the essential functions of the position, with or without an accommodation.  The Court grants Defendant's motion for summary judgment on Defendant's alleged failure to accommodate Plaintiff by failing to transfer him to the Clerk I position.

**B.      Failure to accommodate cane restriction**

Plaintiff argues that the "no cane" policy severely impacted his ability to transfer to a new position because it not only limited the potential positions available for him to fill, but also precluded him from participating in the interactive process because he could not access the facility.  Specifically, Plaintiff argues that Defendant prevented him from participating in the interactive process to identify a proper position for reassignment by denying him access to the facility because he required use of a cane.

As recognized above, to survive a motion for summary judgment, Plaintiff must make an initial showing that he was qualified, with or without reasonable accommodation, to perform one

or more appropriate vacant jobs.[43]  Accordingly, it is Plaintiff's burden initially to identify a vacant position to which Defendant should have transferred him, and Defendant is not required to reassign Plaintiff to a position for which he lacks the requisite skills, to modify the essential functions of a vacant job to make it suitable for Plaintiff, to reassign Plaintiff to a position that does not exist, or to reassign Plaintiff to a position that is not vacant.[44]

Plaintiff recognizes that typically a plaintiff alleging that his employer did not engage in the good faith interactive process must show that there was some job that he might have been able to perform.  He argues, without citation, that this rule should not apply here because Defendant precluded both parties from engaging in the interactive process by prohibiting Plaintiff from entering the facility.  The Tenth Circuit has recognized that even where an employer "fail[s] to fulfill its interactive obligations to help secure a reassignment position, [a plaintiff] will not be entitled to recovery unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position."[45]  The Tenth Circuit has previously addressed a plaintiff's argument that "the court need not consider the availability of suitable vacant jobs," because the employer failed to participate in good faith in the interactive process.[46]  In rejecting this argument, the Court recognized that "the law is now clear on the point and it is contrary to [the plaintiff's] position."[47]

---

[43] *Id*. at 1179.

[44] *Id*. at 1170.

[45] *Id*. at 1174.

[46] *Iverson v. City of Shawnee, Kan.*, 332 F. App'x 501, 503-04 (10th Cir. 2009).

[47] *Id*. at 504.

The Tenth Circuit has assigned to Plaintiff the burden of identifying the existence of a vacant position that he was qualified to perform. The ADA does not relieve Plaintiff from this burden when there is an allegation that the employer failed to engage in the interactive process. Plaintiff has provided no justification, legal or factual, to depart from the Tenth Circuit's prior holdings, and the Court declines Plaintiff's invitation to do so here.[48]

Viewing all the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to satisfy his initial burden of production with regard to his claim that Defendant violated the ADA by failing to provide him with a reasonable accommodation as he has presented no evidence identifying a plausibly reasonable accommodation. Accordingly, the Court grants Defendant's motion for summary judgment.

## IV.    Conclusion

Plaintiff suffered a workplace injury that made him unable to perform the essential functions of his prior position, with or without accommodation. While Plaintiff claims that Defendant failed to accommodate him by transferring him to a different position and allowing him to use his cane, Plaintiff has failed to identify any vacant positions that he was qualified to perform, with or without accommodation. Plaintiff has failed to satisfy his burden to identify a plausibly reasonable accommodation. Accordingly, because Plaintiff has not met his initial burden of production with regard to each element of his prima facie case of failure to accommodate, his claim fails as a matter of law.[49]

---

[48] Indeed, Plaintiff admits that he continued to review online positions available at Defendant's facility and that he did not apply for any positions.

[49] The parties address various other issues in their briefing that the Court need not address in light of its conclusion that Plaintiff has failed to meet his initial burden of production with regard to his prima facie case of failure to accommodate under the ADA.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 35) is **GRANTED** and Plaintiff's claims are dismissed.

**IT IS SO ORDERED**.

Dated this 26th day of March, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE